**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

vs. CASE NO.: 25-20081

TELLY HAMMOND,

Defendant.

## POSITION OF DEFENDANT WITH RESPECT TO SENTENCING FACTORS

COMES NOW Defendant, Telly Hammond, by and through his court-appointed counsel of record, John H. Parker II, pursuant to §6A1.2 of the Sentencing Guidelines and Local Criminal Rule 32.1(d), and submits this Position of Defendant with Respect to Sentencing Factors and would show unto this Court as follows:

Defendant and Counsel have received and reviewed the Presentence Report prepared and submitted by the United States Probation Office in this matter.

### CERTIFICATION

Undersigned counsel herby certifies that he has informed U.S. Probation Officers Vanessa Roberts and Jennifer Perkins and AUSA Greg Allen that there are no disputed matters.

### POSITION OF DEFENDANT

### NOTES IN REGARD TO PRESENTENCE INVESTIGATION REPORT

Defendant, Telly Hammond, submits the following future actions in regard to the Presentence Report:

1. **Note as to Paragraph 51**: Defendant submits that his sister is older than him.

## SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)(1)

The Federal Sentencing Guidelines are advisory; a sentencing court must consider the Guideline range but should also tailor the sentence to other statutory factors; i.e., those factors enumerated in 18 U.S.C. § 3553(a). United States v. Booker, 543 U.S. 220, 245-46 (2005). Under the post-Booker sentencing methodology, the sentencing court follows a three-step process. First, the sentencing court proceeds as it always has, ruling on objections to the presentence report and resolving any factual disputes, and ultimately determining the applicable Guidelines range. United States v. Phelps, 366 F. Supp. 2d 580, 585 (E.D. Tenn. 2005). Second, the sentencing court determines whether any downward departures are appropriate pursuant to the Guidelines and/or policy statements. Id. Third, the sentencing court determines the appropriate sentence in accordance with the factors outlined in 18 U.S.C. § 3553(a). Id. at 586.

Section 3553(a) sets out seven factors for the sentencing court to consider in imposing its sentence. The statute instructs a sentencing court to consider the nature and circumstances of the offense and the history and characteristics of the defendant. The statute also instructs the sentencing court to impose a sentence that is sufficient, but no greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. It also requires a sentencing court to consider the kinds of sentences available and the sentencing range established by the Sentencing Guidelines for the offense and to consider any policy statements issued by the Sentencing Commission. A sentencing court must consider the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct. Lastly, the sentencing court must consider restitution, if any, due to the victim.

In considering this situation, the Court should note that Telly Hammond is a fifty-two (52) year-old man whose life has been framed by drugs and a sense of abandonment. He was raised by his mother in the Lamar Terrace Housing Development, a place where drug dealing was all he would see when he went outside. He was the product of his mother's affair with a married man and his father was rarely around when he was younger and really only came back around when he got kicked out of school at 16. Even though Mr. Hammond was never in a gang, he understood that he had to stand up for his neighborhood, as kids from different projects would fight at school where they were brought together.

He did not have a positive male role model in his life until he was 16, but even though he finally got to visit his father's home, when he did, there was minimal interaction. He was allowed to come over and spend the night maybe 3- 4 times a year. This consisted of him watching TV by himself and then, maybe, going to work with his dad in the morning before going back home. Mr. Hammond was finally able to, essentially, force a bit more of a connection with his dad when he was 20 by getting his father to employ him when there was enough work. This happened because Mr. Hammond wanted to be able to "do something" other than sit around the house playing video games, sell marijuana and dodge bullets. Unfortunately, the work was sporadic and it led to him getting some degree of brain damage when his head was caved in with a brick because someone thought he had money. He did not because his father did not pay him well.

Lamar Terrace was a bad, dangerous neighborhood to live in. Drug dealing was so commonplace that it was normalized and Mr. Hammond grew up thinking that it was the only way to actually make money, so he started dealing marijuana when he was 16. About the only positive Mr. Hammond can come up with about where he lived was that it was a Gangster Disciple neighborhood but, at that time and at least at that location, they did not recruit kids. If

they had, it likely would have been worse for him. Mr. Hammond avoided the gangs because he had too many friends killed in front of him in the crossfire of shootouts. He saw at least 10 friends die this way and the only reason he believes that his home was not shot up and he was not killed was because his home was not located near an entrance/exit to the complex and he was able to run fast when the shooting started.

Mr. Hammond graduated from selling marijuana to cocaine in the early to mid-2000's as the money was better. While he never learned how to "cook", he learned how to sell crack pretty quickly and cocaine was his definitive go-to drug. Unfortunately, that is also when he started to pick up his more serious crimes. He was on probation for a cocaine charge when he was arrested in this matter. He is lucky that he qualifies for the Safety Valve.

Fortunately for Mr. Hammond, and society, he is able to learn in spite of the memory limitations due to his brain damage. He was able to realize that he had a gambling problem and was able to pull himself away from the casinos. While it did take approximately six years to happen, that time period includes the "ramping up" of his addiction. When he was younger, he would get drunk until he got sick but he finally walked away because he did not like the feeling. He smoked marijuana starting when he was 12 and by the time he was 46, he was a daily, heavy marijuana smoker but when he was placed on probation, he was able to walk away from it because he did not want to violate for a hot screen.

Mr. Hammond only completed the 9th grade because he was kicked out of school at the age of 16. When he got incarcerated in this matter, he was able to realize there was more to life than dealing cocaine and he got his GED along with multiple certificates. He even has a plan for his future. He would like to learn to become an electrician. This might seem odd due to his experience in carpentry but he believes that he is a skilled enough carpenter that he can utilize that experience as an electrician where he would not require the assistance of a carpenter during

an install.

## CONCLUSION

Based on the foregoing, Telly Hammond respectfully requests that this Court find that his Total Offense Level is 29 and that the appropriate guideline sentencing range is 97 to 121 months. Furthermore, Mr. Hammond requests, pursuant to the Sentencing Factors under 18 U.S.C. § 3553(a), this court sentence him to a below-guideline sentence as such a sentence would be sufficient, but no greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense and afford adequate deterrence.

Respectfully submitted,

**The Law Office of John H. Parker II**
619 S. Cooper St.
Memphis, TN 38104
Office Phone: (901) 522-8200
E-mail: jhp2law@gmail.com

By: ***/s/ John H. Parker II***
John H. Parker II, #20920

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of October, 2026, a copy of the foregoing electronically filed instrument was electronically served via CM/ECF upon AUSA Greg Allen, 167 N. Main Street, Suite 800, Memphis, TN 38103.

**/s/ John H. Parker II**
John H. Parker II